IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CONTINENTAL MATERIALS, INC.** | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| **VEER PLASTICS PRIVATE LIMITED,** and **MARK HINTERLONG** | : | NO. 2:22-cv-3685-MRP |
| Defendants. | : | |

**Perez, J.**                                                                                                     **April 4, 2023**

**MEMORANDUM**

I.   **BACKGROUND**

Continental Materials, Inc. ("CMI") is a corporation formed under the laws of the Commonwealth of Pennsylvania with a principal place of business in Abington, Pennsylvania. CMI sells roofing products to contractors and vendors of building products throughout the United States. Veer Plastics Private Limited ("Veer") is a corporation formed under the laws of India with its principal place of business in Guarat, India. Veer produces roofing products. Mark Hinterlong is an individual resident of the State of Wisconsin. Compl. ¶¶5-7, ECF No. 1.

In April, 2018, CMI and Veer entered into a Sales and Marketing Agreement ("original Agreement") which contemplated that CMI would employ a Sales Manager to "develop and facilitate new sales" of the roofing products manufactured by Veer and distributed by CMI throughout North America. Compl. Ex. A ¶4(a), ECF No. 1-1. Veer agreed to contribute $14,000 per month towards the cost of maintaining such employee. Id. CMI hired Mark Hinterlong to serve as the Sales Manager in April, 2019. Compl. ¶15; Def.'s Mot. to Compel Arb. 8, ECF No. 21. As a term of his employment, Hinterlong signed a Confidential Information and Relationship Protection Agreement which required him to maintain confidentiality of CMI's trade secrets and prohibited him accepting employment with competitors or interfering with CMI's relationships with its vendors for one year after the termination of his employment with CMI. Compl. Ex. C ¶2-6, ECF No. 1-3. In April, 2022, CMI and Veer terminated the original Agreement and entered into a Purchase and Supply Agreement ("Agreement"). Compl. ¶3. This Agreement prohibited

Veer from soliciting or hiring CMI employees. Compl. Ex. D ¶9, ECF No. 1-4. Both the original Agreement and subsequent Agreement included the following arbitration provision:

> Any dispute, controversy or claim between the parties (whether or not to this Agreement or any transaction pursuant to this Agreement whether during or after the Term) shall be settled by arbitration in London, England under the Rules of Arbitration of the International Chamber of Commerce (the "ICC Rules") by three arbitrators appointed in accordance with the ICC Rules. The arbitration shall be conducted in English. The arbitrators may assess costs, including counsel fees, in such manner as the arbitrator deems fair and equitable. The award of the arbitrators shall be final, binding and non-appealable upon all Parties, and judgement [sic] upon the award may be entered in any court of competent jurisdiction. Notwithstanding the foregoing, a Party may seek specific performance of this Agreement or any other equitable relief in a court of competent jurisdiction.

Compl. Ex. D ¶17; Compl. Ex. A ¶12.

Hinterlong resigned from his employment with CMI in August, 2022 and began to work for Veer shortly thereafter. Compl. ¶4. Upon Hinterlong's resignation, CMI instructed Hinterlong to return his CMI-issued laptop computer. Id. Prior to turning the computer over the CMI, Hinterlong delivered it to Veer who, through a third-party company, imaged the computer and deleted emails and information related to Veer. Id ¶4, 23.

CMI initiated this suite against Veer and Mark Hinterlong by filing a complaint on September 15, 2022. CMI asserts the following claims against Veer: Breach of Contract – Injunctive Relief, Tortious Interference with Contractual Relations, Misappropriation of Trade Secrets – PUTSA and Common Law, Misappropriation of Trade Secrets – DTSA, Violation of Computer Fraud and Abuse Act, and Breach of Contract. Compl. 8-16. On September 20, 2022, Veer commenced an arbitration in London, England with the International Court of Arbitration of the International Chamber of Commerce. Def.'s Mot. to Compel Arb. 18. On November 2, 2022, Veer filed a Motion to Compel Arbitration or, in the Alternative, Dismiss Plaintiff's Complaint. CMI filed a response to Veer's Motion on November 30, 2022, and Veer replied to that response on December 7, 2022. A hearing for oral argument was held on March 27, 2022. This memorandum and order follow.

## II.     ANALYSIS

Before this court can determine whether to enforce the arbitration agreement, it must first answer the threshold question of who decides arbitrability. Under the Federal Arbitration Act (FAA) "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69, (2010)). A court "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id*. at 531 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal quotations omitted). It is presumed that courts should decide questions of arbitrability, and "[t]he burden of overcoming the presumption is onerous, as it requires express contractual language unambiguously delegating the question of arbitrability to the arbitrator." *Opalinski v. Robert Half International Inc*., 761 F.3d 326 (3d Cir.2014), cert. denied, 135 S.Ct. 1530 (2015). "Silence or ambiguous contractual language is insufficient to rebut the presumption." Id. (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 154–55 (3d Cir.2001)).

Courts have found incorporating the rules of the arbitral tribunal to be clear and unmistakable evidence of the parties' intent to have arbitrability decided by the arbitrator, where those rules provide that the arbitrator should undertake decisions of jurisdiction of the arbitral tribunal. *See Chesapeake Appalachia, LLC v. Scout Petroleum*, LLC, 809 F.3d 746, 763 (3d Cir. 2016) ("It appears that virtually every circuit to have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability") (internal quotations omitted).

CMI and Veer specified in their Agreement that arbitration should occur "under the Rules of the Arbitration of the International Chamber of Commerce ('the ICC Rules')." Compl. Ex. A ¶12. The ICC Rules provide that "any question of jurisdiction…shall be decided directly by the arbitral tribunal." Int'l Chamber of Commerce Arbitration Rules, Art. 6(3).

However, where a dispute arguably falls within a narrow carve-out provision, circuit courts have found that questions of arbitrability should remain with the court. *See* See *NASDAQ OMX Grp., Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014) (finding that a qualifying provision that "at least arguably covers the present dispute" creates an ambiguity as to

the parties' intent to have questions of arbitrability decided by the arbitrator); see also *Archer & White Sales, Inc. v. Henry Schein, Inc.,* 935 F.3d 274, 282 (5th Cir. 2019) ("The plain language incorporates the AAA rules—and therefore delegates arbitrability—for all disputes *except* those under the carve-out. Given that carve-out, we cannot say that the Dealer Agreement evinces a 'clear and unmistakable' intent to delegate arbitrability.").

Although the breadth of the arbitration agreement and incorporation of the ICC rules tend to evince the parties' intent to delegate questions of arbitrability to the arbitrators, the inclusion of a provision that at least arguably carves out this dispute creates an ambiguity. Accordingly, the Agreement does not satisfy the "onerous burden of overcoming the presumption"[1] in favor of judicial resolution of the question of arbitrability.

Having determined that the question of arbitrability should be answered by this court, the analysis now turns to whether the arbitration agreement should be enforced as to the claims brought against Veer by CMI. When a court determines whether arbitration should be compelled, "judicial review is limited to two threshold questions: '(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall with the language of the arbitration agreement?'" *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir.1998)).

It is not in dispute that Veer and CMI entered into a valid arbitration agreement, as part of both the original agreement and subsequent Agreement. The only question left before the court is whether the claims brought here fall within the language of the Agreement.

"[W]hether a dispute falls within the scope of an arbitration clause depends upon the relationship between (1) the breadth of the arbitration clause, and (2) the nature of the given claim." *CardioNet, Inc.*, 751 F.3d at 172. Any doubts concerning the scope of an arbitration agreement must be resolved in favor of arbitration. See *CardioNet, Inc.*, 751 F.3d at 172; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "[T]he presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand. Otherwise, the plain language of the contract controls." *Id.* (citing *Granite*

---

[1] *Chesapeake Appalachia*, 809 F.3d at 758.

4

*Rock v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 301 (2010). A contract provision will not be considered ambiguous simply because the parties do not agree upon the proper construction. *Espenshade v. Espenshade*, 729 A.2d 1239 (Pa. Super. Ct. 1999). Only where a contract is reasonably capable of different constructions and understood in more than one sense is it ambiguous. *See Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468–69 (Pa. 2006); *Lang v. Meske*, 850 A.2d 737 (Pa. Super. Ct. 2004); *Thomas Rigging & Constr. Co. v. Contraves, Inc.*, 798 A.2d 753 (Pa. Super. Ct. 2002). Where the alternative meaning is unreasonable, there is no ambiguity. *Murphy v. Duquesne Univ. Of the Holy Ghost*, 777 A.2d 418, 430 (Pa. 2001). Courts "are required to read contract language in a way that allows all the language to be read together, reconciling conflicts in the language without rendering any of it nugatory if possible." *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 137 (3d Cir.2004).

  The arbitration clause here includes *any* dispute, controversy or claim between the parties, at any time during or after the life of the agreement. However, the provision permitting parties to "seek specific performance of this Agreement or any other equitable relief in a court of competent jurisdiction" brings the breadth of the agreement into question. CMI argues that the equitable relief provision is a carveout which, by its plain language, broadly permits the parties to seek injunctive relief directly from any court of competent jurisdiction. Veer argues that there is no 'carveout' and that the provision merely permits parties to seek court intervention in aid of arbitration, i.e., enforcement of an award entered by the arbitrator. Veer further argues that the provision does not carveout any *claims*, rather is permits certain *forms of relief*. Thus, reading the provision as CMI proposes would permit a party to circumvent arbitration by adding a request for equitable relief to any otherwise-arbitrable claim, which would effectively nullify the arbitration agreement.

  At best, CMI's reading may be found to be a second reasonable understanding of the provision, creating an ambiguity as to the scope of the Agreement. However, this court agrees with Veer's position that the equitable relief provision does not 'carveout' any claims from the

5

arbitration agreement, but rather permits parties to seek equitable relief in aid of arbitration.[2] This reading of the Agreement's plain language permits the entire agreement to be read together, without conflicts which render the whole null. This provision could not be broader; the parties agreed to submit *any* dispute, controversy or claim to arbitration. Reading the equitable relief provision as CMI would like us to, carving out *any* request for equitable relief, would create a carveout so broad that it would render the rest of the arbitration agreement void, as it would permit parties to bring any and all claims before a court so long as they include a request for equitable relief. This construction is contrary to principals of contract interpretation and to the parties evidenced intent to send disputes to arbitration. The provision cannot reasonably be read to permit CMI to bring these claims against Veer outside of arbitration. This court finds, as Veer argues, that the equitable relief provision is intended to permit parties to seek judicial enforcement of the arbitration agreement and of any award entered by the arbitrators.

Ultimately, whether this court finds that the scope of the Agreement is ambiguous or that the provision does not carve out the claims brought here does not matter, as both conclusions necessitate the same result. Accordingly, arbitration must be compelled as to all claims brought against Veer by CMI.

### III.   CONCLUSION

For the foregoing reasons, Veer Plastic Limited's Motion to Compel Arbitration or, in the Alternative, Dismiss Plaintiff's Complaint is granted. An appropriate order follows.

---

[2] Note that this ambiguity analysis differs from the ambiguity analysis related to the question of who decides arbitrability. To answer that threshold question, this court determined that the provision 'at least arguably' created a carveout that could exclude these claims. To answer the more substantive question of the scope of the agreement, this court now determines that it does not create a carveout.